*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

——————————

### UNITED STATES
Appellee

**v.**

### Torrence A. ROBINSON, Specialist
United States Army, Appellant

**No. 17-0231**

Crim. App. No. 20140785

Argued November 29, 2017—Decided March 26, 2018

Military Judge: John T. Rothwell

For Appellant: *Captain Cody Cheek* (argued); *Lieutenant Colonel Christopher D. Carrier*, *Major Patrick J. Scudieri*, *Captain Scott Ashby Martin*, and *Captain Ryan T. Yoder* (on brief); *Major Christopher D. Coleman* and *Major Julie L. Borchers*.

For Appellee: *Captain Cassandra M. Resposo* (argued); *Colonel Mark H. Sydenham* and *Major Cormac M. Smith* (on brief); *Captain John M. Gardella*.

Amicus Curiae for Appellee: *Peter Coote*, Esq. (on brief) — for Protect Our Defenders.

Judge OHLSON delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN and SPARKS, joined. Senior Judge EFFRON filed a separate opinion concurring in part and in the result.

——————————

Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a general court-martial with enlisted representation convicted Appellant of one specification of violating a general order for engaging in a prohibited relationship in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2012), and one specification of sexual assault in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012).[1] The panel sentenced Appellant to a

---

[1] The Government's Article 92, UCMJ, specification, and the Army regulation on which the Article 92, UCMJ, offense is based, refer to Appellant's misconduct with junior enlisted soldiers as "fraternization." Dep't of the Army, Reg. 600-20, Personnel-

bad-conduct discharge, reduction in rank to E-1, and forfeiture of all pay and allowances. The convening authority approved the sentence and the United States Army Court of Criminal Appeals summarily affirmed the findings and sentence as approved.

We granted review of the following issues:

> I. Whether the military judge erred by failing to admit constitutionally required evidence under Military Rule of Evidence 412(b)(1)(C).

> II. Whether the military judge committed plain error when he failed to instruct the panel on the mens rea required for The Specification of Charge I, which involved an Article 92, UCMJ, violation of Army Regulation 600–20.

> III. Whether the evidence was legally sufficient to establish that Appellant knew or reasonably should have known that SPC VM was too intoxicated to consent to a sexual act.

*United States v. Robinson*, 76 M.J. 178 (C.A.A.F. 2017) (order granting review).

We affirm the findings and sentence in this case for the reasons set forth below. First, the trial evidence was legally sufficient to establish that Appellant knew or reasonably should have known that Specialist (SPC) VM was too intoxicated to consent. Second, assuming without deciding that the military judge erred in excluding constitutionally required evidence of the victim's flirtatious relationship with Appellant, the error was harmless beyond a reasonable doubt. And third, the military judge did not plainly err in instructing the members on the Article 92, UCMJ, prohibited relationship offense. Accordingly, we affirm the judgment of the lower court.

---

General, Army Command Policy para. 4-16 (Mar. 18, 2008) [hereinafter AR 600-20]. However, to avoid any confusion with the Article 134, UCMJ, 10 U.S.C. § 934 (2012), offense of fraternization, which only applies to relationships between officers and enlisted members, this opinion will refer to Appellant's Article 92, UCMJ, violation as "engaging in a prohibited relationship."

## I. Facts

Appellant's convictions stem from events in July of 2013. At that time Appellant was "a newly promoted E[-]5." He attended a party hosted by a specialist (E-4) where other junior enlisted soldiers were present. SPC VM was one of those soldiers and she was the only female at the party. Prior to the party SPC VM had consumed one mixed alcoholic beverage, and she drank another five or six mixed alcoholic beverages during the party. SPC VM appeared intoxicated to many of the partygoers, including Appellant. SPC VM abruptly left the party after she became uncomfortable with another guest's behavior and drove back to her barracks.

In her barracks room, SPC VM felt "really dizzy and lightheaded" and vomited twice in the kitchen sink. She placed a trashcan next to her bed and removed her clothes before falling asleep. A few hours later, Appellant entered SPC VM's barracks room where he saw a trashcan and a bottle of water next to SPC VM's bed. SPC VM did not remember Appellant entering her room. Instead, her next memory was of Appellant "on top of" her with his penis inside her vagina. SPC VM also remembered turning her head toward the trashcan while Appellant was on top of her. She had no other memories of the sexual assault and only recalled waking up around noon feeling "confused, extremely disgusted and upset."

Appellant provided a statement to the United States Army Criminal Investigations Command (CID) about what happened in the barracks room with SPC VM. In this CID statement, Appellant admitted that SPC VM was intoxicated at the party and almost hit a stop sign as she drove away, and that he thought she might have been "too drunk to have sex."

Appellant's conduct resulted in the convening authority referring two charges against Appellant—an Article 92, UCMJ, charge for engaging in a prohibited relationship by attending a party with junior enlisted soldiers, and an Article 120, UCMJ, sexual assault charge for the sexual conduct with SPC VM in her barracks room. The Government's theory for the sexual assault offense was not that Appellant "began having sex with [SPC VM] while she was asleep." In-

stead, the Government's theory was that SPC VM was "too intoxicated to consent."

Prior to trial, the defense filed a motion in limine to admit evidence under Military Rule of Evidence (M.R.E.) 412 that SPC VM had flirted with Appellant for several months before July 2013.[2] At an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), hearing on this motion, the defense argued that this flirtation evidence was constitutionally required under M.R.E. 412(b)(1)(C). The defense posited that this evidence went to Appellant's "mistake of fact that [SPC VM] did consent to sex on that night." The military judge denied the defense motion in part. He concluded that the evidence of SPC VM's flirting on the night of the party was admissible, but not the evidence of flirting in the months leading up to the party.

At trial, the defense proceeded under the theory that SPC VM consented to the sexual conduct by initiating the sexual encounter or that Appellant reasonably believed she consented to the sexual activity based on her conduct in the barracks room. On cross-examination, SPC VM repeatedly stated that she didn't remember many aspects of what happened in the barracks room. In regard to whether it was possible that she had consented to having sex with Appellant but just didn't remember that fact, SPC VM stated: "I guess anything is possible."

Appellant testified in his defense that SPC VM "reached up from the bed[,] . . . grabbed [his] wrist[,] . . . pulled [him] back," and asked him to stay. Appellant further testified that once on SPC VM's bed, the two of them began kissing and then SPC VM tried to remove Appellant's shirt, motioned for him to remove his belt, took off his clothing, and opened her legs, whereupon they engaged in sexual intercourse.

Following the close of evidence, the defense raised no objections to the military judge's findings instructions. These instructions, which were later read to the panel, included

---

[2] We save for another day the question of whether "flirting" can properly be considered "sexual behavior" under the provisions of M.R.E. 412. Neither party raised this issue on appeal.

the following language for the Article 92, UCMJ, prohibited relationship offense:

> In the Specification of Charge I, the accused is charged with the offense of violating a Lawful General Regulation, in violation of Article 92, UCMJ. In order to find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, that there was in existence a certain lawful general regulation in the following terms: Army Regulation 600-20, dated 18 March 2008, Rapid Action Revision, dated 20 September 2012, paragraph 4-14(b);
>
> The second element is that the accused had a duty to obey such regulation; and
>
> The third element is that on or about 27 July 2013, at or near Fort Stewart, Georgia, the accused violated this lawful general regulation by wrongfully fraternizing with junior enlisted Soldiers.
>
> . . . .
>
> Panel Members . . . Prosecution Exhibit 1 consists of several pages. However, I would focus your attention in reading to obviously paragraph 4-14(b).

Paragraph 4-14(b) of AR 600-20 stated:

> Relationships between Soldiers of different rank are prohibited if they—
>
> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command.
>
> (2) Cause actual or perceived partiality or unfairness.
>
> (3) Involve, or appear to involve, the improper use of rank or position for personal gain.
>
> (4) Are, or are perceived to be, exploitative or coercive in nature.
>
> (5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission.

After deliberating, the members returned findings of guilty for the Article 92, UCMJ, prohibited relationship offense and the Article 120, UCMJ, sexual assault offense.

## II. Discussion

## A. Legal Sufficiency

The first issue we address is whether the trial evidence was legally sufficient to establish that Appellant knew or reasonably should have known that SPC VM was incapable of consenting.

## 1. Applicable Law

"We review questions of legal sufficiency de novo." *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (citations omitted) (internal quotation marks omitted). This legal sufficiency assessment "draw[s] every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Plant*, 74 M.J. 297, 301 (C.A.A.F. 2015) (internal quotation marks omitted) (quoting *United States v. Bright*, 66 M.J. 359, 365 (C.A.A.F. 2008)).

The elements of sexual assault as they relate to this case are as follows:

> (1) The accused committed a sexual act upon another by causing penetration, however slight, of the vulva by the penis;

> (2) The other person was incapable of consenting to the sexual act due to impairment by an intoxicant; and

> (3) The accused knew or reasonably should have known that the person could not consent due to the impairment by intoxicant.

Article 120(b)(1)–(3)(A), (g)(1)(A), UCMJ; *see also United States v. Teague*, 75 M.J. 636, 637 (A. Ct. Crim. App. 2016). In light of the scope of the granted issue, only the third element is relevant to our analysis.

## 2. Analysis

We conclude that the trial evidence was legally sufficient to establish that Appellant knew or reasonably should have known that SPC VM was incapable of consenting. First, SPC

VM had consumed a large quantity of alcohol at the party, and it was apparent to the partygoers—to include Appellant—that SPC VM was intoxicated. Specifically, various witnesses later testified at the court-martial that they witnessed SPC VM stumbling, slurring her speech, and almost hitting a stop sign when driving from the party. Moreover, later that night Appellant told his wife that he was leaving home to go check on a "drunk Soldier" in the barracks.

Second, Appellant testified that when he entered SPC VM's barracks room he saw a trashcan and a bottle of water next to SPC VM's bed.[3] And third, Appellant admitted to CID that SPC VM was "pretty much asleep" when he arrived at her barracks room and that he later thought that SPC VM "was probably too intoxicated to consent" to have sex.[4]

---

[3] Appellant testified that upon seeing these items he did not surmise that SPC VM was concerned about vomiting due to her intoxication. Rather, he asserted that he assumed that SPC VM had placed the trash can and water bottle next to her bed because she was concerned about vomiting due to being emotional. Specifically, Appellant testified on cross-examination: "A lot of people get sick when they become emotional, ma'am."

[4] To put the latter admission in its full context, below is an excerpt of Appellant's questioning by defense counsel:

> Q. Now, at some point, did you tell the CID agent that you thought maybe she was too drunk to have sex?
>
> A. Yes, ma'am.
>
> Q. Why did you tell the agent that?
>
> A. He proceeded to ask the question repeatedly and when he didn't get the answer he wanted, I guess he decided to tell me to put myself in her position if she was my daughter or my family member, how I would feel about the situation.
>
> Q. And when you answered that question, when you said—was that based on being in the perspective of her family member?
>
> A. Yes, ma'am.
>
> Q. When you said that you thought she might have been too drunk, did you mean that you thought that at the time you were having sex with her?

Viewing this evidence in the light most favorable to the prosecution, the Government presented sufficient evidence to establish that Appellant knew or reasonably should have known that SPC VM was incapable of consenting to sexual intercourse due to her impairment by intoxication. Therefore, Appellant's conviction for sexual assault is legally sufficient.

### B. M.R.E. 412

We next turn to the issue of whether evidence of SPC VM's alleged long-standing flirtatious relationship with Appellant prior to the night of the offense should have been admitted at trial under the constitutionally required exception of M.R.E. 412(b)(1)(C). For the purposes of this opinion, we will assume without deciding that it was error for the military judge to exclude this evidence, and we will solely address whether the error was harmless beyond a reasonable doubt. *See United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) ("[I]ssues involving possible constitutional error can be resolved by assuming error and concluding that the error is harmless beyond a reasonable doubt.").

Pursuant to this analysis, the Government bears the burden of establishing harmlessness beyond a reasonable doubt. *See United States v. Savala*, 70 M.J. 70, 77 (C.A.A.F. 2011). In assessing harmlessness, our inquiry evaluates the entire record to determine whether there is a reasonable possibility that this evidentiary error contributed to Appellant's conviction. *See United States v. Ellerbrock*, 70 M.J. 314, 321 (C.A.A.F. 2011).

---

A. Yes, ma'am.

Q. So, at the time that you were having sex with her, you didn't think she was too drunk?

A. No, ma'am.

Q. But only after when CID was asking you to put yourself in her father's shoes is when you gave that answer?

A. Yes, ma'am.

Because of the strength of the Government's case, we conclude that the military judge's presumed error in excluding evidence that SPC VM had flirted with Appellant prior to the night of the offense was harmless beyond a reasonable doubt. First, the Government introduced ample evidence not only that SPC VM was significantly intoxicated, but also that Appellant knew that SPC VM was significantly intoxicated. Specifically, the record clearly shows that Appellant witnessed SPC VM's consumption of alcohol, he observed her slurred speech and stumbling, he admitted to seeing SPC VM almost hit a stop sign as she drove away from the party, he informed his wife about going to the barracks to check on a *drunk* soldier, and he admitted that when he arrived at SPC VM's barracks room he had to ask her, "Do you know who I am?" Further—and importantly—Appellant admitted to CID that he recognized that SPC VM was probably too intoxicated to consent. Therefore, even if the flirtation evidence had been admitted at the court-martial, there is no reasonable probability that it would have changed the result of the trial. Accordingly, the military judge's presumed error in excluding the flirtation evidence under M.R.E. 412 was harmless beyond a reasonable doubt.

## C. Member Instructions

We finally examine whether the military judge plainly erred in instructing the members on the mens rea for the Article 92, UCMJ, prohibited relationship offense.

### 1. Applicable Law

Because Appellant did not object to the military judge's instructions at trial, we review for plain error "based on the law at the time of appeal." *United States v. Guardado*, 77 M.J. 90, 93 (C.A.A.F. 2017). Appellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right. *United States v. Davis*, 76 M.J. 224, 230 (C.A.A.F. 2017). To establish plain error, "all three prongs must be satisfied." *United States v. Gomez*, 76 M.J. 76, 79 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006)). The third prong is satisfied if the appellant shows "a reasonable probability that, but for the error [claimed], the outcome of

the proceeding would have been different." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (citation omitted) (internal quotation marks omitted).

## 2. Analysis

During the past two terms this Court has written extensively about mens rea requirements for military offenses. *See United States v. Haverty*, 76 M.J. 199 (C.A.A.F. 2017); *United States v. Caldwell*, 75 M.J. 276 (C.A.A.F. 2016); *United States v. Rapert*, 75 M.J. 169 (C.A.A.F. 2016); *United States v. Gifford*, 75 M.J. 140 (C.A.A.F. 2016). We need not do so here. Simply stated, the third prong of the plain error analysis resolves the issue before us. Specifically, even if we were to assume without deciding that "recklessness"—or even "knowledge"—was the appropriate mens rea for this Article 92, UCMJ, offense and that the military judge erred in failing to instruct the panel accordingly, Appellant has failed to meet his burden of showing that "but for [this error], the outcome of the proceeding would have been different." *Lopez*, 76 M.J. at 154.

It is uncontroverted that Appellant: knew he was attending a party with junior enlisted soldiers; knew he was the only noncommissioned officer at the party; knew that four of the junior enlisted soldiers at the party were in the same company as he; knew that all of the junior enlisted members were drinking alcohol, including at least one who was underage; knew that one of the junior enlisted members was intoxicated; and knew the noncommissioned officer's creed and the standards for noncommissioned officers. Therefore, even if the military judge had provided the panel members with the appropriate mens rea instruction, it is clear that the panel would have found that Appellant knew that his presence as an E-5 compromised, or appeared to compromise, the integrity of supervisory authority, caused actual or perceived partiality, *or* created a clearly predictable adverse impact on authority. Because Appellant has not demonstrated that the military judge's failure to instruct on the mens rea requirement would have changed the outcome of the court-martial, we hold that the military judge did not plainly err in instructing the members.

## III. Decision

For the reasons cited above, we affirm the judgment of the United States Army Court of Criminal Appeals.

Senior Judge EFFRON, concurring in part and concurring in the result.

The granted issues challenge three aspects of Appellant's court-martial: (1) the content of the instructions on the Article 92 charge that Appellant violated a lawful order by engaging in a prohibited relationship; (2) the legal sufficiency of the evidence on the Article 120 charge that Appellant committed sexual assault when he knew or reasonably should have known that SPC VM was incapable of consent due to impairment by an intoxicant; and (3) the exclusion of evidence under Military Rule of Evidence (M.R.E.) 412 regarding certain interactions between Appellant and SPC VM prior to the date of the sexual assault charged under Article 120.

## I.

I agree that the military judge did not err in instructing the members on the general intent mens rea for the Article 92 offense for the reasons set forth in the majority opinion. *United States v. Robinson*, __ M.J. __ , __ (9–10) (C.A.A.F. 2018). In view of the very low threshold for sustaining a conviction challenged for legal sufficiency, I also agree with the majority opinion's conclusion that the evidence is legally sufficient to support the conviction for sexual assault under Article 120. __ M.J. at __ (7–8).

## II.

With respect to the military judge's ruling on the exclusion of evidence under M.R.E. 412, I respectfully disagree with the majority opinion's conclusion that this case may be resolved by concluding that the evidence in support of the Article 120 conviction was so strong that any error by the military judge in excluding the evidence was harmless beyond a reasonable doubt. __ M.J. at __ (10–12). For the reasons set forth below, we should address the substance of the military judge's ruling under M.R.E. 412, and we should conclude that the military judge did not err in excluding the evidence under the circumstances of this case.

### A. Legal sufficiency

With respect to the legal sufficiency of the evidence, I agree with the majority opinion's focus on cases that rely on

*United States v. Robinson*, No.17-0231
Senior Judge EFFRON, concurring in part and
concurring in the result.

the long-standing precedents of this Court which establish a very low threshold for sustaining a conviction on legal sufficiency grounds. __ M.J. at __ (8). As noted in the majority opinion, the legal sufficiency issue here can be resolved by addressing the third element of the Article 120(b)(3)(A) offense—the requirement for the Government to establish evidence upon which a reasonable panel could find that Appellant engaged in a sexual act with SPC VM when he knew or reasonably should have known that SPC VM was incapable of consenting due to impairment by an intoxicant. __ M.J. at __ (9–10).

In that context, the question of legal sufficiency focuses on Appellant's knowledge of SPC VM's condition. The Government was required to prove that Appellant knew or reasonably should have known that SPC VM " 'lack[ed] the cognitive ability to appreciate the sexual conduct in question or [that she lacked] the physical or mental ability to make and to communicate a decision about whether they agreed to the conduct.' " *United States v. Pease*, 75 M.J. 180, 185 (C.A.A.F. 2016) (quoting *United States v. Pease*, 74 M.J. 763, 770 (N.-M. Ct. Crim. App. 2015)).

The record contains evidence of the observations of SPC VM by Appellant and others in the vicinity of Appellant during the evening of the charged offense showing that SPC VM consumed at least five or six alcoholic drinks at the party. She was variously described as "tipsy," "sloppy," "loud," stumbling, slurring her speech, drunk, and showing signs of intoxication. Eventually, she decided to leave, ran down a flight of stairs, drove away, and swerved to avoid a stop sign.

The host, concerned about her condition, followed her in another car. He returned to the party and told the other guests, including Appellant, that SPC VM had safely returned to the barracks. Later that evening, Appellant told his wife that he was going to the barracks to check on a drunk soldier. The evidence to that point demonstrated that Appellant knew SPC VM was drinking heavily and that she exhibited the behavior of a person who had been drinking to excess. It also demonstrated Appellant knew that the level of drinking had not impaired her ability to communicate with others, her ability to make and act on a decision to

*United States v. Robinson*, No.17-0231
Senior Judge EFFRON, concurring in part and
concurring in the result.

leave the party, or her ability to navigate herself home in a vehicle.

The evidence of what transpired in SPC VM's barracks room is mixed. At trial, Appellant testified that he did not think SPC VM was intoxicated when he arrived at her barracks room two or more hours later. He described her as being "pretty much asleep," then reaching out to him, grabbing his wrist, asking him to stay, and initiating physical activity. He testified that when he subsequently was asked by a United States Army Criminal Investigations Command (CID) agent to put himself in the position of a parent and consider how he would feel about the situation, he responded that he "thought maybe she was too drunk to have sex." In response to questions from both the defense and the prosecution, Appellant acknowledged that he made that statement, reiterated that he had made the statement in the context of how a parent might view the situation, and added that at the time of the sexual act he did not believe that she was too intoxicated to consent. The CID report of Appellant's statement was not introduced into evidence and the CID agent did not testify on this matter.

SPC VM testified she did not hear him enter the barracks room and that she did not become aware of his presence until he had penetrated her as part of the sexual act, at which point she recognized him. She further testified that she felt intoxicated when she returned to her room and when he penetrated her. She added that she blacked out soon after she perceived the penetration and his presence. In response to a question about the possibility that he might have perceived their interaction as manifesting consent, she stated, "I guess anything is possible." In response to questions about her specific interactions with Appellant at that time, she repeatedly stated that she did not remember any details.

The panel, in deciding whether Appellant reasonably should have known that SPC VM was too intoxicated to consent, had the responsibility to determine how much weight to give to the evidence in the case, particularly how much weight to give the conflicting testimony from Appellant and SPC VM about what transpired before,

*United States v. Robinson*, No.17-0231
Senior Judge EFFRON, concurring in part and
concurring in the result.

during, and after the sexual act. Under the low threshold for sustaining a conviction on the issue of legal sufficiency, a reasonable panel could have given greater weight to the testimony of SPC VM and less weight to Appellant's testimony in the course of concluding that at the time of the act, SPC VM was intoxicated and Appellant reasonably should have known that she was incapable of consent due to the impairment by an intoxicant.

## B. M.R.E. 412
### 1. Harmless error

The standard for legal sufficiency is lower than the threshold for finding that an error is harmless beyond a reasonable doubt. The record before us presents conflicting testimony and a witness who recalls little of the events at issue. As such, this case does not present the type of record that permits us to avoid addressing the M.R.E. 412 issue on the theory that any mistake in the exclusion of evidence under M.R.E. 412 was so inconsequential that the error was harmless beyond a reasonable doubt. *See United States v. Ellerbrock*, 70 M.J. 314 (C.A.A.F. 2011). In this case, before addressing the question of prejudice, we must first assess whether there was error.

### 2. Consideration of the evidence
### excluded under M.R.E. 412

In a sex offense case, "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" is not admissible, subject to specific exceptions. M.R.E. 412(a)(1). The granted issue in this case asks whether the military judge erred in failing to admit constitutionally required evidence under M.R.E. 412(b)(1)(C), which provides for the admissibility of "evidence the exclusion of which would violate the constitutional rights of the accused."

At trial, the defense filed a motion under M.R.E. 412 seeking to introduce evidence regarding various interactions between Appellant and SPC VM in the months prior to the charged offense. The defense contended that the evidence at issue was relevant to the defenses of consent and mistake of

*United States v. Robinson*, No.17-0231
Senior Judge EFFRON, concurring in part and
concurring in the result.

fact as to consent. The question of whether any of that evidence was outside the scope of M.R.E. 412 was discussed at trial but is not at issue in this appeal.

As reflected in the parties' briefs, the military judge's findings of fact noted that the evidence on the motion included Article 32 testimony from witnesses who had seen SPC VM showing affection, smiling, flirting, and trying to grab Appellant; testimony from witnesses who had seen them hugging and flirting; testimony that SPC VM "wanted" Appellant and was "trying to get with" him; and Appellant's statement to CID that he and SPC VM had talked numerous times about having sex.

The military judge excluded all of the evidence at issue under M.R.E. 412 with respect to the Article 120 charge except for evidence of Appellant's interactions with SPC VM on the night before and the morning of the charged offense. Under our case law, evidence is constitutionally required under M.R.E. 412(b)(1)(C) if the defense demonstrates that the evidence is relevant and material and the probative value of the evidence outweighs the danger of unfair prejudice. *Ellerbrock*, 70 M.J. at 318–19. The test is case-specific, depending on the issues arising under the charged offense and the circumstances of the case. As such, the issue before us is not whether the types of interactions at issue in this case are admissible as a general matter under M.R.E. 412, but instead whether the evidence identified in the M.R.E. 412 proceeding was required to be admitted into evidence in this case.

As noted earlier, the charged offense required the Government to prove that Appellant knew or reasonably should have known that SPC VM was incapable of consent due to impairment by an intoxicant. Appellant's motion at trial referred generally to acts such as smiling, hugging, flirting, and grabbing—words that encompass a wide range of behavior from mild teasing to sexual innuendo. Without further details as to the specific conduct, the evidence was, at best, marginally relevant to the charged offense and relevant defenses. Likewise, the general reference to talking about sex encompasses a wide range of topics from a vague expression of interest to a specific discussion of time, place, and man-

*United States v. Robinson*, No.17-0231
Senior Judge EFFRON, concurring in part and
concurring in the result.

ner. It is not apparent from the record whether these were necessarily discussions of mutual interest or merely casual banter. Likewise, without further detail as to the specific content of the discussions, the evidence that they talked about sex was, at best, marginally relevant to the charged offense and relevant defenses. Whether this would be necessarily admissible under M.R.E. 412 in another case is not before us. In this case, Appellant has not offered details as to the nature of the conduct or the content of the conversations sufficient to demonstrate that the probative value of the evidence outweighed the danger of unfair prejudice. *See Ellerbrock*, 70 M.J. at 319. Appellant has not demonstrated that the military judge erred by excluding this evidence under M.R.E. 412.