# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, CAMPANELLA,[1] WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JUVENTINO TOVARCHAVEZ**
**United States Army, Appellant**

ARMY 20150250

Headquarters, 8th Theater Sustainment Command
Gregory Gross, Military Judge (trial)
Timothy P. Hayes, Jr. (*DuBay* hearing)
Colonel Anthony T. Febbo, Staff Judge Advocate (pretrial & recommendation)
Lieutenant Colonel Lajohnne A.W. Morris, Staff Judge Advocate (addendum)

For Appellant: Captain Ryan T. Yoder, JA; Major Brian J. Sullivan, JA (on brief); Captain Ryan T. Yoder, JA; Major Brian J. Sullivan, JA (on reply); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Ryan T. Yoder, JA; Major Brian J. Sullivan, JA (on brief on specified issues); Lieutenant Colonel Christopher D. Carrier, JA; Captain Cody D. Cheek, JA; Major Brian J. Sullivan, JA (on reply brief on specified issues); Major Brendan R. Cronin, JA; Major Brian J. Sullivan, JA (on supplemental brief); Major Brendan R. Cronin, JA; Major Todd W. Stewart, JA; Major Brian J. Sullivan, JA (on supplemental reply brief).

For Appellee: Lieutenant Colonel A.G. Courie, III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief); Major Michael E. Korte, JA; Captain Christopher A. Clausen, JA (on brief on specified issues); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Austin L. Fenwick, JA; Captain Joshua Banister, JA (on supplemental brief).

19 July 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

---

[1] Senior Judge Campanella took action on this case prior to leaving the court.

WOLFE, Judge:

This case returns to us for completion of our Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 [UCMJ], review, after a *DuBay*[2] fact-finding hearing. In our original decision we addressed appellant's claim of instructional error pursuant to *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), whether appellant was entitled to a mistake of fact instruction, and whether appellant's defense counsel were ineffective. We resolved the first two issues against appellant, but directed a *DuBay* hearing to address the claim of ineffective assistance of counsel. *United States v. Tovarchavez*, ARMY 20150250, 2017 CCA LEXIS 602 (Army Ct. Crim. App. 7 Sep. 2017).

## BACKGROUND

Appellant was charged with two specifications of sexual assault in violation of Article 120, UCMJ, for sexually assaulting his fellow soldier, Specialist (SPC) JR, on two separate occasions. An enlisted panel of a general court-martial convicted appellant only of the latter instance. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for two years, total forfeiture of pay and allowances, and reduction to the grade of E-1.

At the completion of the *DuBay* hearing, we directed additional briefing on the *Hills* assignment of error based on developments in the case law since we issued our initial opinion. We also granted appellant's motion to file supplemental briefings regarding the claim of ineffective assistance of counsel.[3] With the record now returned to this court, we again resolve the *Hills* issue and the ineffective assistance of counsel claim against appellant and adopt our previous opinion with respect to the mistake of fact instruction.

---

[2] *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

[3] Appellant also requested to file a supplemental brief on the *Hills* assignment of error in light of our superior court's decision in *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017). We received appellant's motion just as we issued our order for additional briefing. Thus, while we denied appellant's motion, it was only because it was mooted by our order on the same issue.

## LAW AND DISCUSSION

### A. The Hills Issue

The military judge gave the panel in this case an instruction that was for all substantive purposes identical to the instruction that the Court of Appeals for the Armed Forces (CAAF) found to be error in *United States v. Hills.* 75 M.J. at 353.

Appellant offered no objection to the instruction at trial. Thus, we test for plain error. "[I]f the accused fails to preserve the instructional error by an adequate objection or request, we test for plain error." *United States v. Williams*, __ M.J. __, 2018 CAAF LEXIS 365, *7 (C.A.A.F. 27 Jun. 2018) (citing *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017)); *see also United States v. Guardado*, 77 M.J. 90, 93 (C.A.A.F. 2017).

Of the three part plain error test, it is now well established that the *Hills* instruction was error that is clear and obvious on appeal. Accordingly, this opinion addresses only the third prong: prejudice. The question then becomes, "what is the appropriate measure of assessing prejudice?"

In this case of forfeited error, does this court determine whether the error was harmless under Article 59(a), UCMJ? Or, as the forfeited error is constitutional, do we determine whether the error was harmless beyond a reasonable doubt? Does appellant have the burden of establishing plain error? Or, to sustain the conviction, is the government required to prove constitutional harmlessness?[4]

We cannot avoid these questions because, in this case, the result turns on which lens we use when assessing the evidence. There are cases where, in practice, the standard for establishing prejudice is irrelevant to an appellate court's determination of the issue. For example, when an error is grossly prejudicial (or harmless under any standard), settling on the correct standard does not change the result. This is not such a case.

Our resolution of the *Hills* error in this case turns entirely on determining the appropriate test for prejudice of a forfeited constitutional error. In their briefs, both parties assert the appropriate standard of review for a forfeited constitutional error requires the government to show the error was "harmless beyond a reasonable

---

[4] Our discussion of the "burden" on a party should be understood in the context of this court's duty to conduct a de novo review of the record under Article 66(c), UCMJ. Although we quote our superior court's and federal court's case law containing references to a party's "burden," at least for an issue which does not require reference to facts outside the authenticated record, the application of that burden may be different in a Court of Criminal Appeals.

doubt." On the other hand, recent decisions by the CAAF have stated that the inquiry is whether appellant has shown material prejudice to a substantial right.

Determining the correct test changes both who has the burden of proof and what they must prove. Is it appellant's burden to show material prejudice to a substantial right? Or, is it immaterial whether the error was preserved or unpreserved and it is the government's burden to prove beyond a reasonable doubt that the error did not contribute to the verdict? There is a vast difference between the two standards. Because we see room for reasonable disagreement–and our dissenting colleague does indeed disagree–we discuss our analysis at some length.

*1. United States v. Wolford*[5]

In *United States v. Wolford*, the CAAF considered an instructional error that amounted to a violation of the accused's right to due process. That is, the erroneous instruction was constitutional error, as in *Hills*. Indeed, *Hills* relied on *Wolford* in determining the standard of review. *Hills*, 75 M.J. at 357. The *Wolford* opinion contained a stand alone section on the standard of review for forfeited instructional error, which stated in its entirety:

> Defense counsel did not object to the military judge's instructions at the time of trial. Even so, "[t]his [c]ourt has determined that waiver must be established by '*affirmative* action of the accused's counsel,' and not by 'a mere failure to object to erroneous instructions . . . .'" *United States v. Smith*, 50 M.J. 451, 455-56 (C.A.A.F. 1999) (quoting *United States v. Mundy*, 2 C.M.A. 500, 502, 9 C.M.R. 130, 132 (1953)) (emphasis in original). Accordingly, we review Wolford's instructional claims de novo. *Id.* at 455. If instructional error is found, because there are constitutional dimensions at play, Wolford's claims "must be tested for prejudice under the standard of harmless beyond a reasonable doubt." *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *Id.* (quoting *United States v. Kaiser*, 58 M.J. 146, 149 (C.A.A.F. 2003)).

*Wolford*, 62 M.J. at 420 (alteration in the original).

---

[5] 62 M.J. 418 (C.A.A.F. 2006).

Under *Wolford*, there does not appear to any difference between preserved and unpreserved constitutional error. Absent a precise affirmative waiver, we would review questions "de novo" and review any error for constitutional harmlessness regardless whether appellant affirmatively objected to the instruction or forfeited the objection.

We distinguish *Wolford* from this case for several reasons.

First, *Wolford* was part of a line of cases that stood "for the proposition that an appellant cannot forfeit an affirmative defense." *Davis*, 76 M.J. at 229 (citations omitted). If *Wolford* is part of a line of cases only addressing instructions on affirmative defenses, then *Wolford* is not controlling when it comes to assessing forfeited *Hills* error.

Second, the CAAF has recently distanced itself from *Wolford's* reasoning. In *Davis* the CAAF included *Wolford* in a list of cases that went against the standard articulated in R.C.M. 920(f), was against the "precise" reading of earlier cases, and stood against "the great weight of our precedent clearly call[ing] for plain error review." *Davis*, 76 M.J. 229. According to *Davis,* a strict application of *Wolford* would be against the majority of the CAAF's case law.

Third, consistent with the reasoning in *Davis*, in cases subsequent to *Hills* the CAAF has applied a plain error test to forfeited *Hills* error. We discuss those cases below.

The dissent correctly notes that the CAAF has never explicitly overruled *Wolford*.[6] Indeed, the CAAF, in *Hills*, cited *Wolford* for the standard of review used in that case. When "instructional error is found [when] there are constitutional dimensions at play, [the appellant's] claims 'must be tested for prejudice under the standard of harmless beyond a reasonable doubt.'" *Hills*, 75 M.J. at 357 (citing *Wolford* 62 M.J. at 420).[7]

---

[6] It is not for this Court to determine that the CAAF has implicitly overruled its precedent. *Davis*, 76 M.J. at 228 n. 2. Accordingly, we do *not* view the CAAF as having overruled *Wolford* in *Davis*.

[7] *Hills*, of course, was a case of *preserved* error. We do not find *Hills* to be controlling precedent in cases of unpreserved error.

*2. United States v. Paige*[8]

In our initial opinion before remanding this case for a *DuBay* hearing, we relied on *United States v. Paige* for the standard of review in cases of forfeited constitutional error. There, a divided court applied a plain error standard of review. *Paige*, 67 M.J. at 449. This is the same standard of review applied by the CAAF in an earlier decision, *United States v. Carter,* wherein the court stated:

> The certified issue requires us to determine whether trial counsel's statements amounted to an impermissible reference to Appellee's Fifth Amendment right to not testify, or whether the statements were a fair response to the defense's theory of the case. In the absence of objection, we review for plain error. R.C.M. 919(c); [*United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001)]. Appellee must show that there was error, that the error was plain, and that the error materially prejudiced his substantial rights. *See United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998). Once Appellee meets his burden of establishing plain error, the burden shifts to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt. *United States v. Carpenter*, 51 M.J. 393, 396 (C.A.A.F. 1999).

61 M.J. 30, 33 (C.A.A.F. 2005). Unlike the decision in *Wolford¸* the CAAF in *Paige* clearly stated appellant's burden to establish plain error. In our original opinion, relying on the last sentence quoted above, we understood the test as first requiring appellant to prove all three elements of plain error. That is, in order to establish plain error, appellant must first establish material prejudice to a substantial right. Only, "[o]nce [appellant] meets his burden of establishing plain error, [will] the burden shift[] to the Government to convince us that this constitutional error was harmless beyond a reasonable doubt. *Paige*, 67 M.J. at 449.

In our initial opinion we struggled to understand the burden shift articulated in *Paige.* As a matter of logic, if appellant has established material prejudice to a substantial right, how could the government ever be able to show that the error was harmless beyond a reasonable doubt? On appeal, an error in a case cannot simultaneously: 1) materially prejudice appellant's rights; and 2) be harmless beyond a reasonable doubt.

---

[8] 67 M.J. 442, 449 (C.A.A.F. 2009).

The plain error standard announced in *Paige* was not without controversy. Judge Stucky, joined by Judge Ryan, argued in dissent that the majority had misapplied the CAAF's precedent.

> The majority asserts that once an appellant has established plain, constitutional error, "the burden shifts to the Government" to establish that the error was harmless beyond a reasonable doubt. *United States v. Paige*, 67 M.J. at 449 (C.A.A.F. 2009) (citing *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005))." But that language from *Carter* was derived from dictum in *Powell*, 49 M.J. at 464-65, that was based on *United States v. Adams*, 44 M.J. 251, 252 (1996), a case in which neither the issue granted for review nor this Court's opinion discussed plain error.

*Paige,* 67 M.J. at 453 (Stucky, J. dissenting).

When we first addressed the *Hills* error in this case we applied *Paige* as we understood it. However, the CAAF has since issued additional opinions addressing forfeited *Hills* error.

### 3. United States v. Guardado and United States v. Williams

Since our original opinion, the CAAF has issued two (unanimous) decisions involving the standard of review in cases of *unpreserved* constitutional error, both involving the exact same type of error as we presently address.

In *United States v. Guardado*, the CAAF stated the standard of review for forfeited *Hills* error as follows:

> This Court has repeatedly held that plain error occurs when: (1) there was error, (2) such error was clear or obvious, and (3) *the error materially prejudiced a substantial right of the accused.* The burden lies with Appellant to establish plain error.

77 M.J. at 93 (citations omitted) (emphasis added). If one asked whether the plain error test applies to forfeited instructional error, even error of a constitutional magnitude, it would appear the CAAF answered the question in *Guardado.*

In *United States v. Williams*, the CAAF directly cited to *Guardado* for the appropriate standard of review, but articulated it in a slightly different manner:

> Under this Court's plain error jurisprudence, to establish plain error an appellant must demonstrate (1) error, (2)

that is clear or obvious at the time of appeal, and (3) prejudicial.

*Williams*, __ M.J.__, 2018 CAAF LEXIS 365, at *7 (citing *Guardado*, 77 M.J. at 93).

Notably, in both *Guardado* and *Williams* the court omitted the second burden shift that had been articulated in *Paige* and *Carter*. That is, in neither case did the court ask whether the error was harmless beyond a reasonable doubt. Indeed, in *Williams*, the court explicitly stated a prejudice analysis that is based on Article 59(a), UCMJ: "Having found error, we must determine whether such error prejudiced Appellant's substantial rights." *Id.* at *8.

### 4. *United States v. Lopez & United States v. Robinson*

In *Molina-Martinez v. United States*, the Supreme Court announced the general rule for assessing the prejudice prong in the case of plain error. "[T]he error must have affected the defendant's substantial rights, *ibid.*, which in the ordinary case means he or she must 'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." 136 S. Ct. 1338, 1343 (2016) (citations omitted).

Because the military justice system relies on a different statutory source for our plain error analysis,[9] it is not always clear that civilian precedents regarding plain error are applicable to military appellate practice. However, in *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017), the CAAF adopted the *Molina-Martinez* standard. The CAAF summarized the plain error standard as follows:

> Appellant thus "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014); *see also United States v. Dominquez Benitez*, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2w 157 (2004) ("the burden of establishing entitlement to relief for plain error is on the defendant claiming it"). "[F]ailure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346,348 (C.A.A.F. 2006). Here, Appellant cannot establish material prejudice.

---

[9] The Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993) was based on an interpretation of Fed. R. Crim. Proc. 52(b). *See United States v. Humpries*, 71 M.J. 209, 220-21 (C.A.A.F. 2012); *Powell*, 49 M.J. 460, 465 (C.A.A.F. 1998).

> In this context, material prejudice to the substantial rights of the accused occurs when an error creates "an unfair prejudicial impact on the [court members'] deliberations." Knapp, 73 M.J. at 37 (alteration in original) (internal quotation marks omitted) (citation omitted). In other words, the appellant must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343, 194 L. Ed. 2d 444 (2016) (internal quotation marks omitted) (citation omitted).

*Id.* (alterations in original); *but see United States v. Haverty*, 76 M.J. 199, 209 (C.A.A.F. 2017) (Stucky, J. dissenting: "In *United States v. Lopez*, we adopted the Supreme Court's interpretation of the prejudice prong of the plain error test: "the appellant 'must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'").

In *United States v. Robinson,* the CAAF applied *Lopez* and *Molina-Martinez* to a case of instructional plain error that appears to be one of constitutional magnitude. 77 M.J. 294, 299 (C.A.A.F. 2018) (citing *Lopez*, 76 M.J. at 154). In *Robinson*, the question was whether appellant was prejudiced when the military judge instructed the panel on an impermissibly low mens rea.[10] The defense had not objected. The court announced the test for determining prejudice in the plain error context, citing to *Guardado* and *Davis*, as follows:

> Because Appellant did not object to the military judge's instructions at trial, we review for plain error based on the law at the time of appeal. Appellant bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right. To establish plain error, all three prongs must be satisfied. The third prong is satisfied if the appellant shows a reasonable probability that, but for the error claimed, the outcome of the proceeding would have been different.
>
> . . . .
>
> Appellant has failed to meet his burden of showing that but for [this error], the outcome of the proceeding would have been different.

---

[10] The CAAF assumed error. *Id.*

77 M.J. at 299 (C.A.A.F. 2018) (quotations and citations omitted). Thus, to the extent that the CAAF's decision in *Guardado* may be susceptible to multiple interpretations, in *Robinson* the CAAF itself interpreted Guardado to require a plain error analysis.

*5. United States v. Riggins[11] and United States v. Oliver[12]*

Although not cases involving instructional error, both *United States v. Riggins* and *United States v. Oliver* provide insight into our superior court's treatment of preserved and unpreserved constitutional errors. Both cases addressed the same error: that the accused was convicted of a lesser-included offense that was not, in fact, a lesser included offense. In *Riggins* the error was preserved and in *Oliver* the error was forfeited. In *Riggins* the court stated for "preserved constitutional errors, such as in the instant case, the Government bears the burden of establishing that the error is harmless beyond a reasonable doubt." 75 M.J. at 85. By contrast, in *Oliver*, the error was never objected to at trial, and the court tested to determine if appellant had met his burden of establishing "material prejudice to his substantial rights." 76 M.J. at 275.

*6. Interpreting the Standard of Review*

In light of *Guardado, Robinson,* and *Williams*, we understand that the appropriate prejudice analysis for unpreserved error–even error of a constitutional magnitude–is whether the error materially prejudiced the substantial rights of appellant. Article 59(a), UCMJ. That is, if appellant meets his burden of establishing plain error, the inquiry ends and we are not required to reach the question of whether the error was harmless beyond a reasonable doubt. We come to that conclusion for several reasons.

First and foremost, we believe our superior court spoke clearly when, at the threshold of their opinion in *Guardado*, they announced they were reviewing the case to determine whether the error materially prejudiced the substantial rights of appellant.[13] 77 M.J. at 93. On balance, the CAAF's decisions in *Williams* and

---

[11] 75 M.J. 78 (C.A.A.F. 2016).

[12] 76 M.J. 271 (C.A.A.F. 2017).

[13] To the extent that this standard contradicts the standard announced in *Wolford, Paige, Harcrow,* or the other cases cited by the dissent, we think it best to follow the CAAFs more recent precedent. While we agree that these cases remain "good law" until the CAAF says otherwise, we are stuck between what the CAAF stated over a decade ago and what they wrote last term. *United States v. Hardy,* __ M.J.__, 2018

(continued . . .)

*Robinson* also steer us towards applying the standard test for determining prejudice as part of a plain error analysis.

While we acknowledge the dissent's reasonable arguments to the contrary, in *Guardado*, the CAAF addressed the *Hills* error within the context of materially prejudicing a substantial right of the accused and concluded it was unable to determine "the military judge's M.R.E. 413/414 instruction was *harmless*." *Id.* at 95 (emphasis added). The CAAF did not state it was unable to determine the instruction was harmless beyond a reasonable doubt. The omission of the phrase "harmless beyond a reasonable doubt" would not appear to be oversight; it would be the whole enchilada. We do not interpret a citation to *Hills* (which is an unsurprising citation in a case discussing *Hills* error) as having intended to change the burden or degree of prejudice required that was so plainly stated at the beginning of the opinion. Nor do we understand the CAAF to have created a *Hills*-specific plain error test.

Moreover the language in *Williams* confirms for us that the test for prejudice is simple harmlessness. __ M.J. __, 2018 CAAF LEXIS 365, * 13-14. In *Williams* the CAAF concluded "the military judge's M.R.E. 413 instruction was not *harmless* with respect to the Specification of Charge I or Specifications 2, 3, and 4 of Charge II." *Id.* at *13. The CAAF never stated this error was not harmless beyond a reasonable doubt. Similarly, the CAAF affirmed Specification 1 of Charge II asserting that based on the corroborating evidence it was "confident that [Williams] committed sodomy with SW by force and without her consent." *Id.* at *14. The CAAF never asserted it was–or required itself to be–confident beyond a reasonable doubt.

And then, we must consider that our superior court in *Lopez* specifically adopted the *Molina-Martinez* plain error test. The CAAF recently went on to apply *Lopez* to an instance of forfeited constitutional error in *Robinson*.

Second, the standard announced in *Guardado, Williams,* and *Robinson* appears to be similar to the standard used in federal civilian appellate courts for assessing prejudice in the case of forfeited constitutional error. Recently, in *United States v. Cardena*, the 7th Circuit summarized the Supreme Court case law on forfeited constitutional error. While the analysis does not square on all four corners with military plain error jurisprudence, the summary is informative:

> But even a jury-instruction error of constitutional dimension is subject to the familiar requirement that the

---

(. . . continued)
CAAF LEXIS 324, at *9 n.5 (C.A.A.F. 5 Jun. 2018) ("When confronted with conflicting precedents, we generally follow the most recent decision.").

error have harmed the defendant. *See Skilling v. United States*, 561 U.S. 358, 414, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010) (noting that a jury instruction error of the *Yates* variety is subject to harmless-error review); *Hedgpeth v. Pulido*, 555 U.S. 57, 60, 129 S. Ct. 530, 172 L. Ed. 2d 388 (2008) (same). In other words, to constitute reversible error, the plain error must have affected the defendant's substantial rights such that there is a reasonable probability that but for the error the outcome of the trial would have been different. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343, 194 L. Ed. 2d 444 (2016); *United States v. McGuire*, 835 F.3d 756, 2016 WL 4527557, at *2 (7th Cir. 2016). The analysis "requires the same kind of inquiry" as harmless-error review, except that the burden is on the defendant to show prejudice. *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Defendants have not satisfied their heavy burden of showing that the error affected their substantial rights. *United States v. Butler*, 777 F.3d 382, 388 (7th Cir. 2015) (calling the plain error test "remarkably demanding").

842 F.3d 959, 998 (7th Cir. 2016). *See also United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005); *United States v. Woodard*, 387 F.3d 1329, 1331 (11th Cir. 2004).

Third, and relatedly, this court may only set aside the findings based on an error of law if the error materially prejudiced the substantial rights of the accused. UCMJ art. 59(a). Only if the Constitution requires a different standard are we released from Article 59(a)'s constraints.[14] *United States v. Vazquez*, 72 M.J. 13, 19 (C.A.A.F. 2013). Our superior court has clearly stated that a military accused does not enjoy due process protections above and beyond what is provided for by the Constitution, statute, and procedural rules. *Id.* Accordingly, it would be inconsistent with Article 59(a), UCMJ, to test if an error was harmless beyond a reasonable doubt in a case where civilian courts would test only simple harmlessness.

Accordingly, we must determine whether the *Hills* error was harmless–that is, whether the "error materially prejudiced Appellant's substantial rights."

---

[14] However, Article 59(a) only applies to errors of law. *Compare* Article 59(a), UCMJ, *with* Article 66(c), UCMJ.

*7. The Error Here Was Harmless*

The evidence against appellant in this case was significant and consisted of more than the complaining witness's testimony. The charged victim, SPC JR testified credibly about the offense. She reported the offense shortly after the assault. A report of a physical examination noted vaginal tenderness and spotting. Swabs taken during the exam revealed the presence of appellant's DNA in SPC JR's vagina.

Text messages between appellant and SPC JR corroborated her initial report and her in-court testimony. Appellant had gone to SPC JR's room under the pretext of returning a box to her that contained some of her military gear. Appellant arrived at SPC JR's barracks and asked by text for her room number. He then texted her to open the door. However, he did not bring the box of gear. Specialist JR testified appellant then assaulted her against her repeated protestations. Alcohol was not involved.

After the assault, appellant initiated a text conversation:

> Appellant: You good
>
> Specialist JR: Nope
>
> Appellant: N Why

Specialist JR did not immediately respond. In the meantime, she texted various military officials asking about moving to a new barracks room. In one message she asked if she could take one or two weeks of leave, "Even if I stay in the barracks and not go anywhere."

Three days later, SPC JR reinitiated the conversation with appellant.[15] After a brief discussion about why appellant never brought her box of military gear (which had been the pretext for coming to her room the night of the assault), SPC JR specifically confronted appellant with an accusation of sexual assault. She texted appellant, "What's weird is I told you no and you still forced me to have sex anyway."

Confronted with an accusation of sexual assault, appellant apologized, told SPC JR he had now dropped her stuff off at the company, and said "from now on im [sic] going to leave you alone."

---

[15] This was a "pretext" text conversation in which SPC JR conducted the texts with an investigator from the Army Criminal Investigation Command.

Not accepting the apology, SPC JR pushed back and asked "If your [sic] sorry why did you do it[?]" Appellant responded by admitting "I made a mistake by crossing the line and I'm sorry for that, you deserve much more than that."

In sum, this was not a case that turned only on the testimony of SPC JR. Her testimony was corroborated by DNA evidence, a forensic exam, her own contemporaneous statements, and text messages that corroborated her timeline and provided significant evidence of appellant's guilt and consciousness of guilt. Appellant did not testify or present evidence of a plausible counter-narrative that would detract from the weight of the government's case.

Given the strength of the evidence, and the lack of significant argument or discussion regarding propensity, we fail to find a material prejudice to any of appellant's substantial rights. Indeed, the absence of any propensity argument (by the trial counsel) and the lack of objection by appellant, is indicative of the small degree that propensity evidence and the erroneous instruction played at this trial.

But to the extent we are wrong, we have also considered whether the evidence is strong enough to convince us that the error was harmless beyond a reasonable doubt. We do this for purposes of transparency, and so that our superior court can make quick work of this opinion if we have erred. We are not convinced. While the evidence is strong, and the verdict has our full confidence, there is a wide gulf between testing for plain error and testing for constitutional harmlessness.

As just discussed, SPC JR's testimony describing an assault was corroborated by independent evidence. But, the DNA evidence, for example, did not directly contradict the defense theory of the case. While the inculpatory text messages by appellant can be interpreted as establishing consciousness of guilt for his crimes (and this is how we see them), they could also be the statements from someone who knows they have acted inappropriately, but not criminally. Accordingly, in our weighing, the evidence in this case falls between the two standards, and necessitates this lengthy analysis.

## B. Ineffective Assistance of Counsel

The initial claim of ineffectiveness centered on an email appellant's civilian defense counsel (CDC) sent his military defense counsel. In the email, the CDC expressed a low opinion of his trial performance, writing, "I screwed up crossing [the victim]. I alone was ineffective. . . ."[16]

---

[16] In our original opinion we noted at length that the email was an unsigned, unauthenticated attachment to appellant's R.C.M. 1105 submissions that did not include the CDC's name or other reliable indicia that it was what it claimed to be. We refused to consider the email. However, based on conflicting affidavits

(continued . . .)

The standard for assessing a claim of ineffective assistance of counsel is well established. To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*, at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

We first address the weight we should give the civilian defense counsel's opinion contained in an email that he was "ineffective." We give it slight weight for two reasons. First, as the Supreme Court has stated, "After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome." *Harrington v. Richter*, 562 U.S. 86, 109 (2011). Second, a counsel's subjective evaluation is of only marginal relevance in resolving an objective inquiry. *Strickland* requires an objective inquiry. 466 U.S. at 688.

Accordingly, we turn to the substance of appellant's claim. We note that the scope of our remand included consideration of "all of appellant's claims of ineffective assistance of counsel." That is, we provided a *broad* mandate to consider appellant's claims *at a forum that provides for compulsory process*. Accordingly, at this point, appellant has had the opportunity to perfect the evidentiary basis for all of his claims of counsel ineffectiveness.

---

(. . . continued)

unrelated to the email, we directed a *DuBay* hearing. For purposes of judicial economy, our *DuBay* order required the military judge to expand the fact-finding hearing to address all of appellant's claims of ineffectiveness, whether raised as assigned errors or raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). In other words, since the authentication of the email could be easily resolved at the *DuBay* hearing, we broadened the scope of the hearing to address the full range of appellant's claims. At the *DuBay* hearing, the civilian defense counsel agreed that he had sent the message, but explained that he was disappointed in his own performance and saw himself as ineffective, not necessarily that he was constitutionally ineffective under *Strickland v. Washington*.

### 1. Failure to Obtain Exculpatory Messages

Before trial, appellant told his civilian defense counsel about messages he had received from SPC JR over Facebook. Appellant claims that in the messages, SPC JR describes the charged conduct as an act of infidelity and adultery, not as a sexual assault. Appellant claims it was error not to introduce the messages.
At the *DuBay* hearing, appellant testified that before trial he had deleted the messages from his Facebook account. He further testified that after trial, he went to Facebook headquarters to try to obtain the deleted messages and that he offered a $2,000 reward to anyone who could recover the messages. Neither effort was successful.

The *DuBay* defense counsel called the civilian defense counsel, who testified that while he remembered a conversation about Facebook messages, he could not recall the messages' content. He testified that appellant told him that he had deleted the messages, and he was concerned that this may be seen at the court-martial as conduct consistent with a consciousness of guilt. He therefore sought to avoid bringing the messages into the trial.

On appeal, appellant argues that his civilian counsel still should have found and introduced the deleted messages because copies likely remained on SPC JR's account.[17] It is appellant's burden to establish that his counsel was ineffective. This case has now had a fact-finding hearing. Appellant's burden was not merely to prove that his counsel didn't obtain the messages. Rather, it was to prove that they were obtainable by diligent counsel and to prove that the content of the messages mattered (i.e. prejudice). Appellant falls short on both counts.

---

[17] The *DuBay* judge found that the deleted messages were not recoverable. Appellant asks us to reject this finding based on a common-sense understanding of how modern communication functions. Based on the record actually established at the hearing, the military judge's ruling is not erroneous. More generally, when the claim on appeal is that the trial attorney was deficient in not providing the trial court with 'X,' the appellant should be providing the reviewing court with 'X.' Except in cases where the appellant can demonstrate that the evidence has since become unobtainable, providing the reviewing court with information helps establish that that it was obtainable by diligent counsel in the first instance. And certainly, the reviewing court will likely need to have the information to determine whether appellant has met his burden of showing the missing evidence was prejudicial under *Strickland.* Lastly, however, counsel risk being hoisted on their own petard if they argue that the trial defense counsel was ineffective for not obtaining evidence that they themselves have not obtained.

### 2. Cross-Examination of SPC JR

On appeal, appellant lays out several areas in which he claims his counsel was ineffective in cross-examining SPC JR.

First, he argues that his counsel should have transcribed SPC JR's Article 32 testimony in time for trial. To the extent that a verbatim transcript was necessary (vice the audio tape or summarized transcript), even post-*DuBay* we do not have a transcription of the Article 32 testimony.[18] Moreover, although perhaps more technically challenging, nothing requires a witness to be impeached (or refreshed) with a written transcript instead of an audio recording.

Second, appellant argues that his counsel should have confronted SPC JR with her Article 32 testimony. At the Article 32, SPC JR testified that she did not initially believe she had been "raped" until the nature of the offense had been explained to her. She also indicated she was conflicted in her feelings about what had happened with regard to her then boyfriend. Having listened to the audiotape, to include her explanations for these feelings, we see no prejudice under *Strickland* in not repeating the same line of inquiry at trial.

Third, appellant claims that his defense team failed to cross-examine SPC JR about two post-assault conversations she had with appellant. Appellant in his affidavit to this court claimed that in both conversations SPC JR referred to the sexual assault as adultery and again repeated that she did not believe she had been raped. Again, having been provided a *DuBay* hearing to investigate this claim, neither side called SPC JR to determine what her testimony would have been if cross-examined, nor was appellant called to testify about these conversations. On balance, we find appellant has failed to meet his high burden of showing that his counsel was ineffective. We must evaluate counsel's conduct "from the counsel's perspective at the time." *Strickland*, 466 U.S at 689. In *Harrington*, the Supreme Court wrote reliance "'on the harsh light of hindsight' to cast doubt on a trial . . . is precisely what *Strickland* . . . seek[s] to prevent." *Harrington*, 562 U.S. at 89. To be sure, as the civilian defense counsel admitted at the *DuBay*, different choices

---

[18] On appeal, appellant has not provided this court with a transcript. Instead, appellant refers us to a disk containing the audio recording, presumably the same disk that was available to the trial participants. The disk contains three separate audio files. In every case, but especially a case where one claim of error involves a counsel's failure to provide the tribunal with a transcript of the hearing, the court would appreciate being provided, if not a transcript, then at least references to specific time stamps on an audio recording so that we may easily find the testimony at issue.

could have been made and different strategies pursued.[19] However, our job is not to determine whether counsel could have performed better; our job is to determine whether counsel were acting as counsel.

The *DuBay* judge determined that appellant's defense team were not deficient in their representation of appellant.[20] Accordingly, the *DuBay* judge did not specifically rule on whether appellant had established the prejudice prong of the *Strickland* inquiry. We take the opposite approach. Although we do not specifically disturb the *DuBay* judge's ruling, we find appellant failed to establish a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN concurs.

CAMPANELLA, Senior Judge, dissenting;

The majority creates a dispute where there is none between the parties. In doing so they ignore our superior court's controlling precedent regarding application of the harmless beyond a reasonable doubt standard of prejudice for forfeited constitutional error. *See United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006); *United States v. Harcrow*, 66 M.J. 154, 160 (2008); *United States v. Sweeney*, 70 M.J. 296, 304 (2011). The majority concludes "our superior court spoke clearly" regarding the standard of mere harmless prejudice used to conduct its analysis in

---

[19] At the *DuBay* hearing, the civilian defense counsel, consistent with the content of post-trial emails he had sent, complained about the speed of the court-martial and the pace in which the panel members were instructed. He specifically faulted himself for not objecting to these issues.

[20] The *DuBay* judge did note several concerns about the civilian defense counsel. First, he faulted the civilian defense counsel for not having better pretrial coordination with the military defense counsel. We agree, but find no prejudice. Second, he described as "difficult to justify" the civilian defense counsel's decision not to object to a panel member who had been a victim of sexual assault based on his in-court read of her demeanor. We disagree, as this is exactly the type of decision we will not second-guess under *Strickland*. Third, he described the civilian defense counsel's decision to wait until after findings to raise a Rule for Courts-Martial [R.C.M.] 917 motion as "baffling." An R.C.M. 917 motion may be raised at any time before adjournment, and since the evidence is certainly legally sufficient, any failure to raise the motion before findings was harmless.

both *United States v. Guardado*, 77 M.J. 90 (C.A.A.F. 2017), and *United States v. Williams*, __ M.J. __, 2018 CAAF LEXIS 365 (C.A.A.F. 27 June 2018). I disagree and would therefore set aside the findings of guilty. I agree with the majority's assessment that the instructional error here was not harmless beyond a reasonable doubt.

In *Guardado*, the CAAF relied on *Hills* for the proposition that instructional error is reviewed de novo. 77 M.J. at 93 (citing *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016). In turn, *Hills* relied on *United States v. Wolford* to assert: "If instructional error is found [when] there are constitutional dimensions at play, [the appellant's] claims must be tested for prejudice under the standard of harmless beyond a reasonable doubt." 75 M.J. at 357 (quoting *Wolford*, 62 M.J. at 420 (internal quotations omitted)).

Just as in this case, *Wolford* involved forfeited constitutional error where the "[d]efense counsel did not object to the military judge's instructions at the time of trial." 62 M.J. at 420. However, contrary to the majority's decision here, our superior court in *Wolford* applied the constitutional standard of prejudice and required the government prove the error was harmless beyond a reasonable doubt. *Id.*

Ironically, in the case at bar the government sets its own constitutional burden by pointing us to both *Harcrow* and *Sweeney*. Where the majority here reads into what "was not" asserted or "was never asserted" by the CAAF in both *Guardado* and *Williams*, in *Harcrow* the CAAF plainly states the standard:

> Having found plain and obvious error, we turn to prejudice
> and consider whether the admission of the laboratory
> reports materially prejudiced a substantial right. Because
> this case involves constitutional error, the question is
> whether the Government has shown that the error was
> harmless beyond a reasonable doubt.

*Harcrow*, 66 M.J. at 160 (citing *United States v. Brewster*, 61 M.J. 425 (C.A.A.F. 2005)) (applying a prejudice analysis of whether the government proved the obvious constitutional error was harmless beyond a reasonable doubt to an instructional error the defense failed to object to at trial). If there were any doubt as to how this standard of plain error prejudice applies to a constitutional error, *Sweeney* asserts:

> Under plain error review, this Court will grant relief only
> where (1) there was error, (2) the error was plain and
> obvious, and (3) the error materially prejudiced a
> substantial right of the accused. Where, as here, the
> alleged error is constitutional, the prejudice prong is
> fulfilled where the Government cannot show that the error
> was harmless beyond a reasonable doubt.

70 M.J. at 304.

The CAAF has not overturned *Wolford*, *Harcrow*, or *Sweeney* with respect to the requirement that the government prove a forfeited error of constitutional dimension was harmless beyond a reasonable doubt. We therefore are bound by them.

Indeed, despite the clarity the majority professes to read into CAAF's purported assertion of mere harmlessness, in both *Guardado* and *Williams* the CAAF concludes they are not convinced the error "played no role" in each appellant's convictions to particular charges. *Guardado*, 77 M.J. at 94-95 ("Although it is certainly possible that the members convicted Appellant based solely on the testimony of his accusers, we are not convinced that the erroneous propensity instruction played no role in Appellant's conviction."); *Williams*, __ M.J. __, 2018 CAAF LEXIS 365, at *9 ("First, with respect to the offense alleged in Charge I, we are not convinced that the erroneous propensity instruction played no role in Appellant's conviction.). To require an error play no role in a conviction is to require the error be harmless beyond a reasonable doubt.

As I would apply the burden that the government prove the instructional error was harmless beyond a reasonable doubt, I respectfully dissent and would set aside appellant's convictions and authorize a rehearing.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court