# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32765

————————————

## UNITED STATES
*Appellee*

**v.**

## Renard D. JENKINS
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 April 2025

————————————

*Military Judge*: Charles E. Wiedie.

*Sentence*: Sentence adjudged 10 July 2023 by SpCM convened at Joint Base Andrews, Maryland. Sentence entered by military judge on 2 December 2023: Bad-conduct discharge, confinement for 150 days, and reduction to E-1.

*For Appellant*: Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Regina Henenlotter, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, RAMIRÉZ, and DOUGLAS, *Appellate Military Judges*.

Judge DOUGLAS delivered the opinion of the court, in which Senior Judge RICHARDSON and Judge RAMIRÉZ joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

DOUGLAS, Judge:

The trial judge found Appellant guilty, in accordance with his pleas, of one specification of domestic violence, in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b; two specifications of communicating threats, in violation of Article 115, UCMJ, 10 U.S.C. § 915; one specification of unlawful entry, in violation of Article 129, UCMJ, 10 U.S.C. § 929; one specification of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907; and one specification of disorderly conduct, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] The trial judge sentenced Appellant to a bad-conduct discharge, confinement for 150 days,[3,4] and reduction to E-1. The convening authority took no action on the findings or sentence.

Appellant raises three issues on appeal which we have reworded: whether (1) Appellant's sentence is inappropriately severe; (2) the trial judge erred when he admitted Appellant's jail phone call recording as rebuttal evidence; and (3) Appellant is due relief because of the Government's post-trial delay.

We find no error that materially prejudiced Appellant's rights, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant entered the Air Force in June 2006. He and his spouse, DJ,[5] were married in April 2013. They lived together with both their child and DJ's son from a different relationship.

Their marriage became tumultuous. Sometime in January 2019, during an argument about his stepson, Appellant threw DJ's bagged clothing from the

---

[1] Unless otherwise noted, all references in this opinion to the to the UCMJ, Military Rules of Evidence (Mil. R. Evid.), and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to a plea agreement, four specifications of communicating threats, in violation of Article 115, UCMJ, 10 U.S.C. § 915, and two specifications of making false statements, in violation of Article 107, UCMJ, 10 U.S.C. § 907, were withdrawn and dismissed with prejudice.

[3] The trial judge specifically sentenced Appellant to 150 days of confinement for violating Article 128b, UCMJ, 90 days for each specification of violating Article 115, UCMJ, no confinement for violating Article 129, UCMJ, 10 days for violating Article 107, UCMJ, and 10 days for violating Article 134, UCMJ. All these terms to confinement were ordered to be served concurrently.

[4] Appellant was credited for 179 days in pretrial confinement.

[5] DJ was a member of the regular Air Force. Out of respect for her privacy, we do not use her grade in this opinion.

second floor of their home down to the first floor, where DJ was located, attempting to strike her with the bagged items. Sometime between May and June 2019, Appellant and DJ had another argument about their relationship in which Appellant told DJ, "I will f[**]king kill you," or words to that effect. In November 2020, Appellant and DJ had a phone conversation in which he told her, "I will f[**]k you up," or words to that effect.

Appellant committed further misconduct almost two years later. On 16 October 2022, Appellant went to his former duty location, found a hidden key card, and used it to enter the building after duty hours to use government computers and printers without authorization. Appellant's first sergeant, Master Sergeant DH, later questioned him about the matter. Upon rights advisement, Appellant falsely claimed he did not wrongfully enter the building despite video footage showing he had.

Appellant engaged in further misconduct on 11 January 2023. Appellant, who by this time was under investigation and knew which trial counsel was assigned to his case, drove unannounced to the parking lot outside his leadership's offices where he met with his commander and first sergeant. Appellant's leadership offices were in the same building as the trial counsel's office. Appellant was upset because his family members allegedly told him trial counsel was using disparaging terms about him during witness interviews. Specifically, Appellant stated he was "going to slap the s[**]t out of [trial counsel]" and he was going to "beat [trial counsel's] a[**]." Appellant's commander attempted to calm him as he breathed heavily and paced in the parking lot. Appellant walked towards the building two separate times. The building's security office learned of Appellant's behavior and, concerned for the safety of those inside the building, put the building in lockdown. Thereafter, Appellant was placed into pretrial confinement until his court-martial.

## II. DISCUSSION

### A. Sentence Appropriateness

The trial judge sentenced Appellant to a bad-conduct discharge, confinement for 150 days, and reduction in grade to E-1. Appellant argues we should set aside the bad-conduct discharge and restore his grade. We find Appellant's sentence is not inappropriately severe and do not grant relief.

#### 1. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). Our authority "reflects the unique history and attributes of the military justice system" including "considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may

affirm only as much of the sentence as we find correct in law and fact and determine should be approved based on the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). By this standard, we may overturn a sentence that is inappropriately severe. *United States v. Schauer*, 83 M.J. 575, 580 (A.F. Ct. Crim. App. 2023). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**2. Analysis**

We are not persuaded Appellant's sentence, to include a bad-conduct discharge and reduction in grade to E-1, is inappropriately severe.

We have considered this particular Appellant. We acknowledge his deteriorating marriage contributed to his poor decisions, but as an adult, only he was responsible for how he handled himself in response to those life stressors, as he acknowledged in his unsworn statement at his presentencing proceedings. Overall, Appellant's personal situation does not mitigate his unlawful conduct such that we would reduce his sentence.

The nature and seriousness of Appellant's crimes also support the sentence imposed. His misconduct spanned four years and involved numerous offenses, including domestic violence towards his spouse and threats of violence to include ending her life, which she understood as credible. These events targeted their personal home and affected their personal relationship. Appellant also used a hidden key card to enter a Government-leased building after hours without authorization for his personal use. When confronted, he lied, not considering that security cameras captured his unlawful entry. Furthermore, he committed disorderly conduct in a parking lot where his leadership and trial counsel worked, including threatening to harm trial counsel. This conduct was so disturbing the security office put the building in lockdown to ensure the safety of all involved.

Appellant's record of service spanned 17 years by the time of his court-martial. His annual performance reviews reflected outstanding work performance. His commander and first sergeant testified on his behalf in his presentencing hearing and opined he had high potential for rehabilitation in society. The positive aspects of Appellant's service record must be taken in context with his repeated instances of misconduct, however.

4

The record of trial further shows Appellant took responsibility for his crimes by pleading guilty to the offenses for which he was convicted rather than contesting them at trial. This is another factor weighing in his favor.

We have carefully considered Appellant's personal history and characteristics, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. *See Anderson*, 67 M.J. at 705. We conclude Appellant's sentence is not inappropriately severe.

## B. Government Rebuttal Evidence in Sentencing

Appellant seeks relief alleging the trial judge wrongly admitted rebuttal evidence of a phone call he made from pretrial confinement. Appellant submits we should set aside his bad-conduct discharge and restore his grade. The Government disagrees and argues the phone call was properly admitted in response to Appellant's unsworn statement. We find no relief is warranted.

### 1. Additional Background

Appellant made a recorded telephone call from pretrial confinement to an unidentified female on 28 June 2023—12 days before his trial. This phone call, which lasted almost 16 minutes, was one of several calls Appellant made from pretrial confinement. In this recorded call, Appellant made comments related to his upcoming court-martial. For example, Appellant called the domestic violence charge pending against him "stupid" and the victim, DJ, a "crazy little a[**]." In reference to apologizing for his actions, he said he "[a]in't doing sh[**]," and he "[d]on't give a f[**]k."

The Government first attempted to admit this phone recording in its presentencing case, arguing it was evidence of Appellant's lack of potential for rehabilitation. Trial defense counsel objected. The trial judge agreed with the Defense and denied admitting the recorded call at that time because it was not evidence in aggravation.

In the presentencing proceeding, Appellant made an unsworn statement. He opened by explaining, "Your Honor, my misconduct, and my misconduct alone, led to this court-martial. And I will always regret the decisions I made that brought me here." Later, he added, "I know that my actions have brought me here, and I have to take accountability for them." Towards the end of his remarks, he added, "I have made mistakes that I will regret for the rest of my life." In closing, he added, "I am grateful to those individuals who have testified on my behalf. I ask that you take them into account when crafting my sentence. These are the people I worked with who know how much I love my country and how hard I am willing to work for it."

After Appellant made his unsworn statement, trial counsel again offered the recorded call as rebuttal evidence marked for identification as Prosecution

Exhibit 4 (PE 4). Trial defense counsel objected again, claiming this evidence was not relevant or proper rebuttal evidence because rebuttal evidence must be of an assertion of fact, not an opinion. The Defense did not object for insufficient foundation or danger of unfair prejudice.

The military judge overruled the defense objection and stated:

> The accused's unsworn statement states that his conduct alone led to this court-martial, that he regrets the decisions that he made, and that he'll regret the mistakes that he made for the rest of his life. I think what has been proffered is relevant to rebut that. So I will allow it for that purpose. What is his expression of – about the crimes and the victim. So just that is what I'll consider as part of that. So to that extent, the objection is – on the relevancy part is overruled. Again, the court understands the context of it, frustration, that all goes to weight as opposed to admissibility.

During sentencing argument, the Government made multiple references to various remarks Appellant made in the recorded call.

**2. Law**

### *a. Standard of Review*

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018). This "occurs when a military judge either erroneously applies the law or clearly errs in making his or her findings of fact." *United States v. Donaldson*, 58 M.J. 477, 482 (C.A.A.F. 2003) (citing *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

"Where an appellant has not properly preserved an issue for appellate review under the harmless error standard by making a timely objection at trial, the appellant's claim will be forfeited in the absence of plain error." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (quoting *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F 2007)). "A timely and specific objection is required so that the [trial] court is notified of a possible error, and . . . has an opportunity to correct the error and obviate the need for appeal." *Id.* (quoting Stephen A. Saltzburg et al., FEDERAL RULES OF EVIDENCE MANUAL § 103.02(1) (10th ed. 2011)).

Under plain error review, an appellant "has the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *United States v. Lopez*, 76 M.J. 151, 154 (C.A.A.F. 2017) (internal quotation marks and citation omitted). "The plain-error doctrine 'is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Ruiz*, 54 M.J. 138, 143 (C.A.A.F. 2000) (quoting *United States v. Frady*, 456 U.S. 152, 163 n.14 (1982)).

"When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Hays*, 62 M.J. 158, 166 (C.A.A.F. 2005) (quoting *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). A "military judge is presumed to know the law and apply it correctly" and to be "capable of filtering out inadmissible evidence." *Robbins*, 52 M.J. at 457 (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id.* (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)).

### b. Relevancy

Mil. R. Evid. 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Mil. R. Evid. 402 states that "[r]elevant evidence is admissible unless any of the following provides otherwise: (1) the United States Constitution as it applies to members of the Armed Forces; (2) a federal statute applicable to trial by courts-martial; (3) [the Military Rules of Evidence]; or (4) [the Manual for Courts-Martial]."

Mil. R. Evid. 403 states that "[t]he military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."

"A party may claim error in a ruling to admit . . . evidence only if the error materially prejudices a substantial right of the party and . . . on the record . . . timely objects or moves to strike . . . and . . . states the specific ground, unless it was apparent from the context." Mil. R. Evid. 103(a)(1).

At a presentencing proceeding, the accused may offer evidence in extenuation and mitigation. R.C.M. 1001(d)(1). This may include expressions of remorse for the offense or offenses of conviction. However, trial counsel may offer its own evidence that tends to show the accused's "expressions of remorse" during the court-martial which "can arguably [be] construed as . . . shallow, artificial, or contrived." *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992) (citations omitted). Furthermore, the military judge is "justified in

considering" the "best evidence" of an accused's "true feelings" when "fashion[ing] an appropriate sentence." *United States v. Leach*, No. ACM 39805 (f rev), 2022 CCA LEXIS 76, at \*19 (A.F. Ct. Crim. App. Feb. 3, 2022) (unpub. op.). An inference of lack of remorse, however, "may not be drawn from [an accused's] failure to testify [under oath] or from his pleas of not guilty." *Id.*

### c. Rebuttal Evidence

> The accused may make an unsworn statement and may not be cross-examined by trial counsel upon it or examined upon it by the court-martial. The prosecution may, however, rebut any statements of fact therein. The unsworn statement may be oral, written, or both, and may be made by the accused, by counsel or both.

R.C.M. 1001(d)(2)(C).

"The prosecution may rebut matters presented by the defense." R.C.M. 1001(e). The "legal function" of rebuttal evidence is to "explain, repel, counteract or disprove the evidence introduced by the opposing party." *United States v. Saferite*, 59 M.J. 270, 274 (C.A.A.F. 2004) (quoting *United States v. Banks*, 36 M.J. 150, 166 (C.M.A. 1992) (citation omitted)). "The scope of rebuttal is defined by evidence introduced by the other party." *Banks*, 36 M.J. at 166 (citations omitted).

"Rebuttal evidence, like all other evidence, may be excluded pursuant to [Mil. R. Evid.] 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Saferite*, 59 M.J. at 274 (citing *United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001)). "Military judges have wide latitude in controlling the presentation of rebuttal evidence." *United States v. Gittens*, 36 M.J. 594, 598 (A.F.C.M.R. 1992) (citation omitted).

"[T]he relevance of the Government's rebuttal evidence must be determined in light of the evidence first introduced and issues initially raised by the defense." *United States v. Bazar*, No. ACM 37548, 2012 CCA LEXIS 242, at \*15 (A.F. Ct. Crim. App. 29 Jun. 2012) (unpub. op.) (alteration in original) (quoting *United States v. Hallum*, 31 M.J. 254, 255–56 (C.M.A. 1990)). When an accused "opens the door, principles of fairness warrant the opportunity for the opposing party to respond, provided the response is fair and is predicated on a proper testimonial foundation." *United States v. Eslinger*, 70 M.J. 193, 198 (C.A.A.F. 2011) (citing *United States v. Blau*, 17 C.M.R. 232, 244 (C.M.A. 1954) (holding that otherwise "an accused would occupy the unique position of being able to 'parade a series of partisan witnesses before the court' . . . without the slightest apprehension of contradiction or refutation" (omission in original))).

### d. Unsworn Statements

At a presentencing hearing, an accused is permitted to make an unsworn statement that is not subject to cross-examination. "The prosecution may, however, rebut any statements of facts therein. The unsworn statement may be oral, written, or both, and may be made by the accused, by counsel, or both." R.C.M. 1001(d)(2)(C).

Whether the words of an appellant constitute a statement of fact, opinion, or "indeed, an argument," is viewed from context. *United States v. Cleveland*, 29 M.J. 361, 364 (C.M.A. 1990); *see also United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (finding "the prosecution was entitled to produce evidence that appellant had not tried, or at least had not tried very hard" to obey the law).

### 3. Analysis

Appellant submits the trial judge erred in admitting PE 4 as rebuttal evidence because "there was no conflict between the record[ed phone call] and the unsworn statement." Appellant further maintains the recording should have been excluded because it was "highly prejudicial evidence" with negligible offsetting materiality or probative value. The Government, for its part, asserts Appellant's statements in the phone call reflecting no regret were direct rebuttal of Appellant's unsworn statement. We find the trial judge did not abuse his discretion in concluding that portions of PE 4 relating to Appellant's crimes and DJ, the victim, were relevant, proper rebuttal, and admissible under the balancing test set forth in Mil. R. Evid. 403.

### a. Evidence Relevant and Admissible in Rebuttal

Appellant's remarks during the recorded phone call were relevant to specific issues raised at the presentencing hearing because they tended to make certain facts of consequence in the proceedings more probable or less probable. *See* Mil. R. Evid. 401. In particular, the recorded remarks had a bearing on the pertinent question of whether Appellant's stated remorse for his criminal conduct was sincere.

Appellant opened and closed his unsworn statement by acknowledging his misconduct was the reason for his court-martial and claiming he would always regret his decisions. Appellant also expressed remorse for his actions and the loss of the career he worked so effectively to develop over 17 years. A mere 12 days earlier, however, Appellant was recorded as saying that he did not "give a f[**]k." These competing assertions gave the trial judge a better foundation for weighing and evaluating Appellant's true beliefs about his misconduct. Through this lens, the evidence was relevant to warrant consideration by the trial judge. As noted above, a military judge is "justified in considering" the

"best evidence" of an accused's "true feelings" when "fashion[ing] an appropriate sentence." *Leach*, unpub. op. at *19.

Additionally, we find Appellant's unsworn statements claiming he will always regret his misconduct an assertion of a fact—which opened the door to rebuttal. The recorded pretrial confinement phone call contradicted this professed remorse by revealing that on an occasion shortly before his sentencing hearing he had stated to the contrary that he did not "give a f[**]k" about his misconduct. In summary, the trial judge did not abuse his discretion because the evidence was relevant and proper grounds for rebuttal, pursuant to Mil. R. Evid. 401.

### b. Evidence Properly Admitted under Mil. R. Evid. 403

Appellant's brief also raises the issue of Mil R. Evid. 403, asserting the "highly prejudicial" nature of his remarks in the recorded phone call admitted as PE 4. We find Appellant did not properly preserve the issue of the admissibility of PE 4, or portions thereof, due to unfair prejudice under Mil. R. Evid. 403. Therefore, Appellant's objection is forfeited, and we review for plain error only.

By this standard, we do not find the trial judge committed error. The trial judge could reasonably conclude the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or being misleading or a waste of time. *See* Mil. R. Evid. 403. While the trial judge did not require the exhibit to be redacted in any way, he allowed PE 4 into evidence solely for rebuttal of two particular sentiments in Appellant's unsworn statement—Appellant's conduct alone led to the court-martial, and regret. He specifically did not allow it into evidence as aggravation evidence. The trial judge appropriately constrained himself to considering only those matters in PE 4 that related to the crimes and the victim. Moreover, the trial judge implied the risk of undue prejudice was low when he asserted, he "underst[ood] the context of it, frustration." We do not find the trial judge erred.

Assuming *arguendo* the trial judge erred by admitting portions of the recorded phone call, we find the error was not plain or obvious. Furthermore, we find any error in admitting portions of the recorded phone call had no substantial influence on the sentence. *See Barker*, 77 M.J. at 384; *Lopez*, 76 M.J. at 154. We note Appellant was sentenced by a trial judge rather than by court members. Accordingly, we are convinced the trial judge could put the recorded phone call admitted into evidence into its proper context without succumbing to the dangers of unfair prejudice.

Indeed, the trial judge suggested he did not give this evidence great weight; he acknowledged it showed Appellant's sense of frustration and concluded that "all goes to weight as opposed to admissibility." After considering the relative

strength of the Government's and Appellant's presentencing cases overall, we are convinced the recorded phone call was not pivotal to Appellant's sentence and any error in admitting this evidence had no substantial influence on the sentence.

### C. Post-Trial Delay

Appellant seeks relief due to what he characterizes as the Government's "excessive delay" in the production of the record of trial (ROT) to this court. He asks us to set aside his bad-conduct discharge and restore his grade. We find no relief is warranted.

#### 1. Additional Background

The charges in this case were referred to a special court-martial on 10 July 2023. With Appellant's consent, his court-martial occurred the same day.

The convening authority signed the decision on action memorandum on 9 August 2023. On 16 August 2023, the trial judge signed the entry of judgment. On 16 August 2023, the court reporter certified the record of trial (ROT). The ROT was served on Appellant on 25 October 2023. On 2 December 2023, the trial judge signed a corrected entry of judgment. Appellant's case was docketed with this court on 11 December 2023, which was 154 days after his trial and sentencing. Appellant then filed his assignments of error brief on 12 December 2024.

On 30 January 2025, the court granted the Government's motion to attach a declaration offered in response to Appellant's claim of excessive post-trial delay. This declaration from Captain (Capt) WR, the Chief of Military Justice for the 316th Wing legal office (316 WG/JA), included a chronology of post-trial case processing.[6] Capt WR explained, "[S]ome of the delay in the post-trial processing of this case was due to the transition from physical ROTs to [electronic ROTs (eROTs)], with additional guidance requested from JAJM [the Air Force appellate records office] throughout the process." Several mid-August 2023 entries in Capt WR's chronology indicate they were "waiting on answers from JAJM for process of ROTs and copies for this case due to complexity of case." By 18 October 2023, they had completed "Part 1 [of the] eROT and physical ROT." However, the chronologies provided by the court reporter and Capt WR did not specifically attribute any period of delay to the format (physical or electronic) of the ROT.

---

[6] We consider the Government's declaration to help us resolve Appellant's claim of post-trial delay, which is not fully resolvable by the record. *See United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020).

**2. Law**

We review "de novo whether an appellant's due process rights are violated because of post-trial delay." *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citing *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006).

*Livak* established an aggregate sentence-to-docketing standard threshold of 150 days for facially unreasonable delay in cases like Appellant's that were referred to trial on or after 1 January 2019. *Id.* (citing *Moreno*, 63 M.J. at 142). This threshold "appropriately protects an appellant's due process right to timely post-trial . . . review and is consistent with our superior court's holding in *Moreno*." *Id.*

*Moreno* identified four factors for appellate courts to consider in determining whether there has been a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). Prejudice may arise from three interests of those convicted of crimes: (1) "prevention of oppressive incarceration pending appeal;" (2) "minimization of anxiety and concern of those . . . awaiting the outcome of their appeals;" and (3) "limitation of the possibility that a convicted person's grounds for appeal, and his or her defense in case of reversal and retrial, might be impaired." *Id.* at 138–39 (citations omitted).

However, in cases where an appellant has not shown prejudice from the delay, we will only find a due process violation when the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). This court also has the power to grant sentencing relief, pursuant to Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2), for unreasonable post-trial delay even in the absence of prejudice. *See also United States v. Valentin-Andino*, No. 24-0208, 2025 CAAF LEXIS 248, at *11 (C.A.A.F. 31 Mar. 2025) (holding a Court of Criminal Appeals may provide appropriate relief for excessive post-trial delay under Article 66(d)(2), UCMJ).

**3. Analysis**

We find Appellant is not entitled to any relief for excessive post-trial delay in this case. As a starting point, we consider the length of the delay, which exceeded the 150-day threshold by 4 days. *See Moreno*, 63 M.J. at 135. This is facially unreasonable, which weighs in Appellant's favor.

Second, we analyze the reason for the delay and find the primary cause, as explained in Capt WR's declaration, was the transition from physical ROTs to eROTs. *See id*. While this is not specifically evident in the chronologies provided, we defer to Capt WR's explanation. The legal office appears to have been

hamstrung by institutional changes to ROT-compilation processes, resulting in an inefficient use of time. We find this factor weighs in Appellant's favor.

Third, we assess whether Appellant asserted his right to timely post-trial processing. In this case, Appellant did not assert his right until his initial brief to this court, which weighs against him.[7]

Fourth, we consider whether Appellant experienced any prejudice. Here, Appellant's argument for prejudice is that he could have appealed sooner. Appellant acknowledges, however, that this court granted his ten requests for enlargements of time to file his initial brief, which did not occur until 12 December 2024. He does not assert this delay—presumptively unreasonable by four days—actually prejudiced him. Also, if Appellant had wanted his appeal to be decided sooner, he could have taken less than one year to submit his assignment of errors. We find this factor weighs against Appellant.

On balance, we do not find a due process violation. *See Livak*, 80 M.J. at 633. Further, we do not find the delay excessive or egregious, such that it "adversely affect[s] the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. The period of delay from sentencing to docketing exceeded the benchmark by only four days and the record provides absence of prejudice.

Recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] Appellant asserted his right to speedy appellate review of his case in his initial brief to this court, around a year after the case was docketed.